UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONICA W.,[1] | Case No.: 25-cv-0682-DMS-DEB |
| Plaintiff, | **REPORT AND RECOMMENDATION ON JOINT MOTION FOR JUDICIAL REVIEW** |
| v. | |
| FRANK BISIGNANO,[2] Commissioner of Social Security, | |
| Defendant. | **[DKT. NO. 12]** |

This Report and Recommendation is submitted to United States District Judge Dana M. Sabraw pursuant to 28 U.S.C. § 636(b)(1) and Civil Local Rule 72.1.c.

## I.    INTRODUCTION

Plaintiff Monica W. seeks judicial review of the Commissioner of Social Security's denial of her application for disability benefits. Dkt. No. 1 (Compl.). The parties filed a Joint Motion for Judicial Review. Dkt. No. 12.

For the reasons discussed below, the Court recommends **REVERSING** and **REMANDING** for further proceedings.

//

---

[1] In the interest of privacy, this Order uses only the first name and the initial of the last name of the non-governmental party in this case. CivLR 7.1(e)(6)(b).

[2] Frank Bisignano is substituted for Leland Dudek pursuant to Fed. R. Civ. P. 25(d).

## II.   PROCEDURAL BACKGROUND

Plaintiff applied for Supplemental Security Income disability benefits alleging disability beginning January 1, 2019. AR 236.[3] The Social Security Administration denied Plaintiff's application initially and on reconsideration. AR 62, 81. Plaintiff requested and received an Administrative Law Judge ("ALJ") hearing, after which the ALJ issued a written decision finding Plaintiff not disabled. AR 17–27, 99. The Appeals Council denied Plaintiff's request for review (AR 1), and this case followed.

## III.   SUMMARY OF THE ALJ'S DECISION

The ALJ followed the five-step sequential evaluation process. 20 C.F.R. § 416.920(a)(4)(i)–(v). At step one, the ALJ found Plaintiff had "not engaged in substantial gainful activity since May 31, 2022, the application date." AR 19.

At step two, the ALJ found Plaintiff's bipolar and major depressive disorders are severe impairments. AR 19.

At step three, the ALJ found Plaintiff did not have a physical impairment or combination of physical impairments that met or medically equaled those in the Commissioner's Listing of Impairments. AR 19. The ALJ also applied the "paragraph B" criteria to Plaintiff's mental impairments and found Plaintiff had "moderate" limitations in all four areas.[4] AR 20–21.

Before proceeding to step four, the ALJ found Plaintiff had the residual functioning capacity ("RFC") to perform all work with the following limitations:

> [U]understand[ing], remember[ing], and carry[ing] out simple job instructions and simple tasks, unskilled work; able to interact with coworkers and supervisors, but no teamwork and no collaborative work; can

---

[3] "AR" refers to the Administrative Record lodged on March 20, 2025. Dkt. No. 8. The Court's citations to the AR use the page references on the original document rather than the page numbers designated by the Court's case management/electronic case filing system ("CM/ECF"). For all other documents, the Court's citations are to the page numbers affixed by CM/ECF.

[4] These criteria are listed in 20 C.F.R. § 416.920a(c)(2).

25-cv-0682-DMS-DEB

appropriately make hand offs of work materials and products to coworkers and supervisors; no public contact; can appropriately respond to supervision, routine settings and situations, as well as changes in routine settings and situations; able to make decisions, ask questions, and use judgment.

AR 21.

At step four, the ALJ found Plaintiff had no past relevant work. AR 26.

At step five, the ALJ concluded Plaintiff could perform jobs that exist in significant numbers in the national economy. AR 26–27. The ALJ, therefore, concluded Plaintiff was not under a disability since May 31, 2022. AR 27.

## IV.   STANDARD OF REVIEW

The Court reviews the ALJ's decision to determine whether the ALJ applied the proper legal standards and entered findings "supported by substantial evidence . . . ." 42 U.S.C. § 405(g); *accord, Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) ("We will affirm the ALJ's determination . . . if the ALJ applied the proper legal standard and his decision is supported by substantial evidence."). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 97 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is "more than a mere scintilla, but less than a preponderance . . . ." *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)).

The Court may not impose its own reasoning to affirm the ALJ's decision. *Garrison*, 759 F.3d at 1010. The Court "must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). "[I]f evidence exists to support more than one rational interpretation, [the Court] must defer to the [ALJ's] decision . . . ." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).

//

//

## V.    DISCUSSION

Plaintiff alleges the ALJ erred by: (1) failing to provide specific, clear and convincing reasons to discount Plaintiff's subjective symptom testimony; (2) improperly using Plaintiff's activities of daily living ("ADLs") to discredit her symptom testimony; (3) failing to resolve a conflict between the Vocational Expert's ("VE") testimony and the Dictionary of Occupational Titles' ("DOT") reasoning level classifications; (4) assessing Plaintiff's current actual educational level incorrectly; and (5) ignoring record evidence supporting a disability finding.

### A.    *Plaintiff's Testimony*

The Court first addresses Plaintiff's arguments that the ALJ did not properly analyze Plaintiff's subjective symptom testimony. The Court agrees the ALJ's decision does not meet the legal standards.

In evaluating a claimant's subjective symptom testimony, "an ALJ must engage in a two-step analysis." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (citation omitted). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017) (quoting *Garrison*, 759 F.3d at 1014). Second, "[i]f the claimant satisfies the first step . . . and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id*. (quoting *Garrison*, 759 F.3d at 1014–15).

In her June 26, 2022 Adult Function Report, Plaintiff reported that "I have trouble consintrating [sic]" and "[f]ocusing on one task at a time is impossible. Getting things done in a timely matter becomes so overwhelming I get confused and tend to cry uncontrollable [sic]." AR 222. She stated, "[i]f I'm having a bad day nothing will get done. I will not even shower, clean, or even watch TV." AR 223. Plaintiff wrote she "can not get along with others[,]" "get[s] very frustrated easily," and is prone to "violent behavior." AR 227, 229.

25-cv-0682-DMS-DEB

At the October 31, 2025 ALJ hearing, Plaintiff testified:

- "Sometimes when I get depressed, I absolutely . . . won't even leave my house, I'm very anti-social . . . otherwise things make me very angry sometimes and so I try not to go out of my house so I can avoid situations that cause problems." AR 35.

- "[S]ometimes I get into . . . depressive states where I will not leave my house for days and days and days, and sometimes I won't shower for days." AR 37.

- "[My Bipolar] kind of varies to be honest, sometimes I can have a good month and I would have . . . 15 or 20 good days and only 10 or 11 bad days. And then there's some . . . months where I have really bad days . . . like 25 bad days and maybe 5 good days." AR 38.

- "[If] I'm in one of those [depressed] moods, I won't even turn on the TV, I won't take showers, I will barely get up to eat . . . I'll sleep all day, all night, it just goes like for days." AR 38.

- During manic episodes, "I get really anxious, and . . . [s]ometimes I will be all over the place . . . I'm talking so fast that nobody can understand me, I can't slow down . . . [i]t happens on good days." AR 39.

- At my "last job, I got into a small confrontation with the employer, I got extremely like agitated and . . . I got fired for it. I seem to get very agitated pretty quickly . . . I've never been able to even hold full-time employment . . . for a very long period of time." AR 41.

Plaintiff's cousin submitted an Adult Third-Party Function Report corroborating Plaintiff's testimony about the effects of her bipolar disorder as follows:

- Plaintiff has "Bipolar I with manic depression and tend[e]ncies to rage out." AR 193.

- On bad days, Plaintiff "gets really depressed and won[']t leave the couch . . . on a good day she can clean the whole house but on a bad day she[']s very lethargic." AR 195.

- Plaintiff "has violent outbursts" in response to "people trying to give instructions or demands . . . ." AR 198–99.

25-cv-0682-DMS-DEB

The ALJ found Plaintiff's "medically determinable impairment could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not consistent with the medical evidence and other evidence in the record." AR 22. The ALJ's decision, however, does not contain specific, clear and convincing reasons for rejecting Plaintiff's subjective symptom testimony.

The crux of Plaintiff's subjective testimony is her bipolar disorder prevents her from sustaining regular and continuing work because, on "bad days," her depressive episodes prevent her from functioning. AR 35, 37–38. Plaintiff also testified about periods of mania wherein she "get[s] really anxious" and "will be all over the place . . . I'm talking so fast that nobody can understand me, I can't slow down[.]" AR 39.

If credited, Plaintiff's testimony would compel a conclusion that her bipolar disorder prevents her from sustaining regular and continuing work, and, therefore, she is disabled. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040–41 (9th Cir. 2007) (reversing and remanding, because the ALJ did not provide clear and convincing reasons to exclude claimant's testimony which, if incorporated into the RFC, would have established he was disabled.); *see also* SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996) ("[T]he RFC assessment must include a discussion of the individual's abilities" to perform "sustained work activities in an ordinary work setting on a regular and continuing basis. . . . A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or equivalent work schedule."); SSR 85-15, 1985 WL 56857, *5–6 (Jan. 1, 1985) ("Since mental illness is defined and characterized by maladaptive behavior, it is not unusual that the mentally impaired have difficulty accommodating to the demands of work and work-like settings. . . . The mentally impaired may cease to function effectively when facing such demands as getting to work regularly, having their work supervised, and remaining in the workplace for a full day.").

The ALJ neither evaluated whether Plaintiff can sustain regular and continuing work, nor cited clear and convincing evidence for rejecting Plaintiff's testimony that her bipolar disorder prevents her from doing so. Instead, the ALJ: (1) summarized Plaintiff's

subjective symptom testimony (AR 22); (2) summarized the medical record (AR 22–24); and (3) rejected Plaintiff's testimony by citing progress notes reflecting that Plaintiff "made statements to her mental health providers that indicate her symptoms were not as severe as she alleged in the disability application" (i.e., "I'm doing pretty good actually," and "everything is great"). AR 24.

These isolated reports of improvement, however, do not constitute clear and convincing reasons for rejecting Plaintiff's testimony about the limitations of her bipolar disorder. *Garrison*, 759 F.3d at 1017 (in the context of mental health issues, isolated reports of improvement "must be interpreted with an understanding of the patient's overall well-being and the nature of her symptoms . . . improved functioning while being treated and while limiting environmental stressors does not always mean that a claimant can function effectively in the workplace."); *Diedrich v. Berryhill*, 874 F.3d 634, 642 (9th Cir. 2017) ("[T]he fact that [Plaintiff] was not exhibiting certain symptoms at the time of her appointment on a particular day does not indicate that [Plaintiff] was not experiencing those symptoms generally or at other pertinent times.").

Further, certain progress notes cited by the ALJ selectively highlight Plaintiff's statements of improvement but omit other portions of the progress notes documenting continuing limitations. AR 24–25. For example, Plaintiff's September 12, 2022 progress note where she reported she was "doing pretty good" (AR 444), also documents manic episodes where she "do[es]n't care about any consequences" and was hyperverbal with decreased "need for eating and sleeping" (AR 445). And the June 27, 2023 progress note where Plaintiff reported "[e]verything is still great" (AR 512), also documents "[i]ncreased high levels of energy w/o the need for eating and sleeping," "[r]acing [f]light of ideas," and "[d]epressive" thought content (AR 513–14).[5]

---

[5] The ALJ also described other mental health examinations and findings (AR 23–24), but omitted statements tending to support Plaintiff's testimony, such as week-long depressive episodes (AR 435–37, 462, 473, 481–83), and manic behavior (AR 298, 305, 318, 382–83, 544, 556–58).

25-cv-0682-DMS-DEB

This selective reliance on portions of Plaintiff's progress notes while ignoring others tending to support a disability finding is error. *Holohan v. Massanari*, 246 F.3d 1195, 1207 (9th Cir. 2001) ("selectively [relying] on some entries" and ignoring others showing possibly disabling impairments is error); *Ignacio P. v. Kijikazi*, No. 22-cv-1769-MSB, 2024 WL 211797, at *12 (S.D. Cal. Jan. 19, 2024) ("cherry-picking of certain inconsistencies ignores the record as a whole and is not a clear, convincing, and specific reason for discrediting Plaintiff's testimony.").

These errors are not harmless. If Plaintiff's testimony about the effects of her bipolar disorder were credited, it would follow that she could not sustain regular and continuing work (i.e., she would frequently be off-task or miss work often). The VE testified no jobs are available for someone with Plaintiff's RFC who is off-task more than 15% of the time or misses work two days or more per month. AR 44 (Q: "[I]f this hypothetical individual were to miss two days a month of work . . . [or] be off task at least 15% or more, would the individual be able to do jobs you cited or any other jobs?" A: "No, again not if that is consistent and ongoing."). The Court, therefore, recommends remanding Plaintiff's disability claim for further proceedings to reevaluate Plaintiff's subjective symptom testimony.[6]

B.    *Reasoning Levels and Vocational Testimony*

Plaintiff alleges the ALJ erred by failing to identify and reconcile a conflict between Plaintiff's RFC and the reasoning level required by the VE's identified occupations. Dkt. No. 12 at 21–25. The Court agrees.

---

[6] Although Plaintiff argues the ALJ improperly relied on her ADLs to discount her testimony (Dkt. No. 12 at 16–21), the RFC discussion does not appear to consider Plaintiff's ADLs (*see* AR 21–26). If the ALJ relies on Plaintiff's ADLs in formulating her RFC on remand, the ALJ "must make specific findings relating to [the ADLs] and their transferability [to a work setting] to conclude that a claimant's [ADLs] warrant an adverse credibility determination." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007); *see also Popa v. Berryhill*, 872 F.3d 901, 906 (9th Cir. 2017) (finding error where the ALJ failed to explain why the claimant's ADLs contradicted her testimony or were transferrable to a work environment).

25-cv-0682-DMS-DEB

At step five of the sequential evaluation process, the Commissioner must "identify specific jobs existing in substantial numbers in the national economy that [a] claimant can perform despite [his] identified limitations." *Zavalin v. Colvin,* 778 F.3d 842, 845 (9th Cir. 2015) (quoting *Johnson v. Shalala,* 60 F.3d 1428, 1432 (9th Cir. 1995) (citing 20 C.F.R. § 416.920(g))). In making this determination, the ALJ must rely on the DOT, which is "the SSA's primary source of reliable job information[,]" and the VE's testimony regarding "specific occupations that a claimant can perform in light of [her RFC]." *Id*. at 845–46.

When the RFC and the DOT conflict, "the ALJ is required to reconcile the inconsistency." *Zavalin,* 778 F.3d at 846–47 (citing *Massachi v. Astrue,* 486 F.3d 1149, 1153–54 (9th Cir. 2007)). Specifically, the ALJ must identify the conflict and "determine whether the vocational expert's explanation for the conflict is reasonable and whether a basis exists for relying on the expert rather than the [DOT]." *Massachi*, 486 F.3d at 1153.

"The [DOT] classifies jobs by General Educational Development Reasoning Level." *Kelsey v. Berryhill*, No. 6:16-cv-01253-AA, 2017 WL 3218072, at *3 (D. Or. July 27, 2017). "A job with Reasoning Level 1 requires the worker to '[a]pply commonsense understanding to carry out simple one- or two-step instructions.'" *Leach v. Kijakazi*, 70 F.4th 1251, 1256 (9th Cir. 2023) (quoting DOT, app. C (4th ed. 1991), available at 1991 WL 688702). "A job with Reasoning Level 2 demands more; the employee must '[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions.'" *Id.* (quoting DOT, app. C).

The ALJ's non-disability finding was based on the VE's identification of Level 2 jobs that Plaintiff could perform.[7] Plaintiff's RFC, however, limited her to "understand, remember, [and] carry out simple job instructions and simple tasks." AR 21. In formulating this RFC, the ALJ expressly rejected two Disability Determination Services ("DDS")

---

[7] Specifically: (1) Packager (DICOT 920.587-018, available at 1991 WL 687916); (2) Industrial Cleaner (DICOT 381.687-018, available at 1991 WL 673258); and (3) Assembler (DICOT 729.687-010, available at 1991 WL 679733). *See also* AR 27, 43–45.

25-cv-0682-DMS-DEB

consultants' opinions that Plaintiff was "not significantly limited in ability to carry out detailed instructions." AR 25–26; *see also* AR 57, 75 (DDS medical opinions).

This creates a discrepancy the ALJ did not resolve. The ALJ found Plaintiff significantly limited in her ability to carry out detailed instructions. AR 25–26. The Level 2 jobs the ALJ found Plaintiff capable of performing, however, require the ability "to carry out detailed . . . written or oral instructions." *Leach*, 70 F.4th at 1256.

The ALJ's failure to identify and resolve this conflict, left a "gap in the record" precluding the Court from "determin[ing] whether substantial evidence supports the ALJ's step-five finding that [Plaintiff] could perform [the] work." *Zavalin*, 778 F.3d at 846, 848.

This error also is not harmless. All jobs identified by the VE require Level 2 reasoning beyond what the ALJ found Plaintiff can perform. The Court, therefore, recommends remanding this matter to reconcile this discrepancy. *Rounds v. Comm'r of Soc. Sec. Admin.*, 807 F.3d 996, 1004 (9th Cir. 2015) (finding non-harmless error because there was "no explanation in the record as to why the VE or the ALJ may have believed that [plaintiff's] specific limitation . . . should not be taken at face value.").

## VI.   REMAND

"The decision whether to remand a case for additional evidence, or simply to award benefits is within the discretion of the court." *Trevizo*, 871 F.3d at 664 (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)). Because a properly formulated RFC might support a conclusion that Plaintiff was not disabled, a remand for further proceedings is appropriate here. *See Bunnell v. Barnhart*, 336 F.3d 1112, 1116 (9th Cir. 2003) (remanding for further administrative proceedings where several "outstanding issues" remained to be solved, as it was "not clear from the record that an [ALJ] would be required to find the claimant disabled and award disability benefits").

//

//

//

//

25-cv-0682-DMS-DEB

## VII.  CONCLUSION

Based on the foregoing, the Court **RECOMMENDS** entering an Order: (1) approving and adopting this Report and Recommendation; (2) **GRANTING** the Joint Motion for Judicial Review in Plaintiff's favor and **REVERSING** the Commissioner's decision; and (3) **REMANDING** this case for further proceedings consistent with the findings presented herein.

**IT IS HEREBY ORDERED** that any written objection to this report must be filed with the court and served on all parties no later than **March 19, 2026**. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court no later than **March 26, 2026**. The Parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

**IT IS SO ORDERED.**

Dated:  March 5, 2026

_____
Honorable Daniel E. Butcher
United States Magistrate Judge

25-cv-0682-DMS-DEB